UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:08-CV-00015-JHM

| | |
|---|---|
| VANESSA L. POTTS and JOHN L. POTTS | PLAINTIFFS |

v.

| | |
|---|---|
| MARTIN & BAYLEY, INC., d/b/a/ Hucks,<br>CATLOW, INC. and HUSKY CORPORATION | DEFENDANTS |

and

| | |
|---|---|
| MARTIN & BAYLEY, INC., d/b/a/ Hucks | CROSS-CLAIMANT |

v.

| | |
|---|---|
| CATLOW, INC. and HUSKY CORPORATION | CROSS-DEFENDANTS |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant/Third-Party Defendant Catlow, Inc.'s Motion for Summary Judgment on Defendant/Third-Party Plaintiff Martin & Bayley, Inc.'s Claim for Indemnity [DN 151]. Fully briefed, this matter is ripe for decision.

## I. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by " showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## II. BACKGROUND

The facts in this opinion are drawn mainly from the Court's earlier Memorandum, Opinion, and Order issued on July 27, 2010 [DN 135]. This case arises out of an incident that occurred at the Morganfield, Kentucky Huck's station on January 14, 2008. Plaintiff Vanessa Potts and her 10-year-old son, W.P., stopped at Huck's to fill up Mrs. Potts' automobile with gasoline. After Mrs. Potts parked the car at pump #1, W.P. used his mother's credit card to initiate a pay-at-pump transaction for unleaded fuel. He set the automatic shutoff mechanism to the highest setting and re-entered the vehicle while the gasoline was still pumping. After some time had passed, Mrs. Potts asked W.P. if the fuel was still pumping. W.P. mentioned that the numbers on the pump had stopped advancing and got out of the car to complete the transaction. He then noticed that there was an accumulation of fuel on the ground and that gasoline was still flowing out of the pump. W.P. tried to detach the lever for the automatic shutoff and tried squeezing the handle to get the fuel to stop pumping. The latch released, but fuel continued to flow from the nozzle.

After hearing W.P. call out for assistance, Mrs. Potts opened the driver side door to help. As she put her foot on the ground, flames erupted around the accumulated gasoline and caught her left leg on fire. She then climbed to the other side of the car and escaped out of the passenger door. She attempted, unsuccessfully, to put the flames out by using the "stop, drop, and roll" technique. W.P. then used Mrs. Potts' shoe, which had fallen off as she had run from the fire, to extinguish the flames. Mrs. Potts suffered second and third degree burns as a result of the fire.

Shortly after, first responders arrived to treat Mrs. Potts' wounds and extinguish the fire which had engulfed her car. According to Fire Marshall Phil Fogle, firefighters at the scene reported that the nozzle was on the ground when they arrived and was still pumping gas. Because of this and other recent nozzle failures, Marshall Fogle ordered Mark Bayley, one of the Huck's owners, to take all old nozzles out of service and replace them.

Prior to the events described above, there were multiple incidents of gasoline overflow at the Huck's store, the majority of which were reported to Huck's employees, including an incident earlier that same day. Huck's employee Paul Mullen testified that an overflow occurred on the day of the alleged incident, and that he had placed oil-dry on the spill. Mullen also testified that he bagged off the nozzle but did not contact anyone about the spill or investigate the nozzle. Other than his testimony, there is no evidence that the nozzle was in fact bagged off. The Martin & Bayley employee working at the time of the incident failed to stop Mrs. Potts' refueling process although Plaintiff's minor child was pumping the gasoline, which is a violation of Martin & Bayley policy. The Martin & Bayley employee also failed to engage an emergency shut-off switch, pursuant to Martin & Bayley policy and Kentucky Administrative Regulations, after the fire had started.

In a report prepared by expert witness Richard MacInness, it was concluded that W.P. was

3

using a Catlow nozzle at the time of the alleged incident. The unintended continued flow of gasoline from the Catlow nozzle was caused by a "stuck poppet stem." MacInnes opined that the failure of the poppet stem was caused by a lack of ordinary care in Catlow's design, manufacturing, and/or supply management practices, and that the nozzle was defective and unreasonably dangerous for use by the public at the time it was sold to Martin and Bayley. He further opined that the presence of the defect was hidden and thus not detectable by a station operator.

After an initial complaint filed against Martin & Bayley on February 12, 2008, for premises liability, an amended complaint was filed by Plaintiffs which included products liability claims against Catlow, Inc. and the Husky Corporation, the manufacturers of the gasoline nozzles used by Martin & Bayley on January 8, 2009. On the same day, a third-party complaint was filed by Martin & Bayley against Catlow and Husky, which included claims of indemnity and reimbursement. After it was discovered that the nozzle used by W.P. was a Catlow nozzle, both Plaintiffs and Martin & Bayley dismissed all claims against Husky. Catlow has now filed a motion for summary judgment against Martin & Bayley as to the indemnity and reimbursement claims found in the third-party complaint.

### III. DISCUSSION

**A. Indemnity Claim**

Under current Kentucky law, "liability among joint tortfeasors in negligence cases is no longer joint and several, but is several only." Degener v. Hall Contracting Corp., 27 S.W.3d 775, 779 (Ky. 2000). K.R.S. § 411.182 provides that "[i]n all tort actions, including products liability actions, involving fault of more than one (1) party to the action . . ., the court . . . shall instruct the jury to [determine] . . . [t]he percentage of the total fault of all the parties to each claim that is

4

allocated to each claimant, defendant, third-party defendant, and person who has been released from liability." K.R.S. § 411.182 "'is simply a codification of this common law evolution of the procedure for determining the respective liabilities of joint tortfeasors,' whether joined in the original complaint or by third-party complaint." Ky. Farm Bureau Mut. Ins. Co. v. Ryan, 177 S.W.3d 797, 802-03 (Ky. 2005) (quoting Degener, 27 S.W.3d at 779). "If there is an active assertion of a claim against joint tortfeasors, and the evidence is sufficient to submit the issue of liability to each, an apportionment instruction is required." Floyd v. Carlisle Constr. Co., 758 S.W.2d 430, 432 (Ky. 1988) (emphasis omitted).

Despite this rule on apportionment, the Kentucky Supreme Court has made it clear that indemnity claims are still viable under Kentucky law. See Degener, 27 S.W.3d at 780. However, cases permitting recovery based on indemnity principles "'are exceptions to the general rule, and are based upon principles of equity.'" Id. (quoting Louisville Ry. Co. v. Louisville Taxicab & Transfer Co., 77 S.W.2d 36, 39 (Ky.1934)). Such equitable exceptions are reserved for two classes of cases: "first, for those cases in which the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant; and second, for those cases in which both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury." Id. (internal quotations omitted). "In other words, '[w]here one of two parties does an act or creates a hazard and' a second party, 'while not concurrently joining in the act, is, nevertheless thereby exposed to liability . . ., the party who was the active wrongdoer or primarily negligent can be compelled to make good to the other any loss he sustained.'" Hall v. MLS Nat. Med. Evaluations, Inc., 2007 WL 1385943, at *3 (E.D. Ky. May

5

8, 2007) (quoting Brown Hotel Co. v. Pittsburgh Fuel Co., 224 S.W.2d 165, 167 (Ky.1949)).

Brown Hotel presents the classic example of a passive wrongdoer entitled to indemnity. In Brown Hotel, an employee for Pittsburgh Fuel Company was filling a manhole, controlled by Brown Hotel, full of coal and failed to properly secure the manhole cover after he was finished. A pedestrian fell into the unsecured manhole and suffered injuries. The court found that Brown Hotel's "fault was a negative tort in failing to check upon the act of the coal delivery man and in failing to observe its affirmative duty to the public to see that the way was free of obstruction or the pitfall." Brown Hotel, 224 S.W.2d at 167. For that reason, the court held that Brown Hotel was entitled to indemnity from Pittsburgh Fuel. Id.

By contrast, Burton v. H.O. Sports Co., Inc., 2009 WL 1390832 (W.D. Ky. May 14, 2009), demonstrates an example of two active wrongdoers. In Burton, the plaintiff was injured waterskiing when his water ski, manufactured by defendant H.O. Sports, malfunctioned. Plaintiff filed a complaint against H.O. Sports claiming, among other things, products liability. H.O. Sports then filed a third-party complaint against the driver of the boat Reisz seeking indemnification for any potential liability. H.O. Sports claimed that any liability it might suffer was caused by Reisz's primary negligence in providing plaintiff alcohol, allowing plaintiff to be pulled by a boat after consuming alcohol, failing to provide plaintiff with the proper warnings manufactured by H.O. Sports, and driving his boat in a negligent manner while pulling plaintiff on water skis. The Court found that H.O. Sports claim for indemnity failed because it was an active wrongdoer, in essence, finding that both Reisz, as the driver of the boat, and H.O. Sports, as the manufacturer of the water ski, concurrently joined in the act that contributed to plaintiff's injury.

This Court in Burton, held that the proper result for the action was not indemnity but was

apportionment under Kentucky law.

> [T]he jury will be instructed to determine the fault of the parties and apportion liability in proportion to the fault of H.O. Sports, Reisz, and Burton. H.O. Sports will be held liable only for that portion of the damages the jury determines the Plaintiff sustained as a result of H.O. Sports manufacturing a defective product. Essentially then, H.O. Sports' indemnity claim would seek to recover from Reisz the amount of damages which the jury determined was entirely and directly caused by H.O. Sports. H.O. Sports, as an active wrongdoer, cannot properly seek indemnification from Reisz for any injuries sustained by Plaintiff as a result of the defective condition of the slalom water ski.

Burton, 2009 WL 1390832, at *4.

The facts of the instant case are much closer to those in Burton than those in Brown Hotel, and the Court finds that the allegedly negligent conduct of Martin & Bayley, if proven true at trial, makes Martin & Bayley an active wrongdoer. Martin & Bayley claims that it "has been sued because it allegedly failed to prevent the defective nozzle from injuring Ms. Potts[,]" and that "[i]t merely failed to detect the defect, and is therefore claimed to be liable." (Def. Martin & Bayley's Resp. to Def. Catlow's Mot. for Summ. J. 4.) In reality, it has been alleged that, among other things, Martin & Bayley failed to: (1) change any nozzles in response to multiple prior incidents of gasoline overflow reported at the Morganfield Hucks in the four weeks before Plaintiff's accident; (2) follow its own procedures by allowing Plaintiff's minor child to pump gasoline; and (3) follow its own procedures and Kentucky Administrative Regulations regarding the initiation of an emergency shut-off in the event of a fire. Given these allegations, the Court believes that this case is distinguishable from Brown Hotel. Unlike Brown Hotel, there is evidence that Martin & Bayley was aware of the dangerous condition on its premises. Furthermore, Madison & Bayley is not only being sued for its failure to maintain its premises but also its conduct in response to an injury on its premises. The actions taken and not taken after the initial discovery of the fire compose part of the negligence

claim against Madison & Bayley.

These allegations clearly represent primary and active wrongdoing, if proven true at trial. In such an event, Martin & Bayley's claim for indemnity would be an improper attempt to hold Catlow monetarily liable for the negligence of Martin & Bayley in the maintenance of their premises and response to the alleged incident. If the allegations are proven false, then there will be no liability to indemnify. Just as the proper result in Burton was to allow the jury to apportion fault pursuant to Kentucky statute, the proper result in the instant case is to dismiss the indemnity claim and allow the jury to determine the appropriate amount of liability for the culpability of each defendant. The Court finds that there is no genuine dispute of material fact that the allegations against Martin & Bayley, if proven true at trial, make it an active wrongdoer. Therefore, the Court **GRANTS** Catlow's motion for summary judgment as to Martin & Bayley's indemnity claim.

**B. Reimbursement for Replacement and Maintenance**

Catlow has also moved for summary judgment as to Martin & Bayley's claim for reimbursement. Martin and Bayley claims that before and after the two years that Catlow nozzles were used, that it purchased, on average, thirty (30) nozzles per month. However, during the two years that Martin & Bayley exclusively used Catlow nozzles, Martin & Bayley was forced to purchase, on average, eighty (80) nozzles per month. Martin & Bayley appears to be seeking reimbursement for the extra fifty (50) nozzles per month that they were forced to purchase during the twenty-four (24) month span that it exclusively used Catlow nozzles.

Catlow contends that it is entitled to summary judgment because there is no privity between itself and Martin & Bayley. Catlow sold the nozzles at issue to a middle-man company, Jorgensen Petroleum, who in turn sold the nozzles to Martin & Bayley. Catlow argues that without privity,

8

there can be no claim for reimbursement. Martin & Bayley, in their response, present an assignment of warranty rights by Jorgensen Petroleum which Martin & Bayley claims defeats Catlow's lack of privity defense.

In its reply, Catlow has filed the affidavit of Cameron Carmack, the President of Catlow, wherein he states that the nozzles sold to Jorgenson between 2005 and 2007 had an eighteen (18) month warranty. Carmack also states that "Catlow is unaware of any instances where Catlow did not honor its warranty by replacing and/or refunding nozzles returned by Jorgenson under warranty[.]" Aff. Carmack 3. As this affidavit was produced in Catlow's reply, Martin & Bayley has not had a chance to respond to it and the Court requests that Martin & Bayley issue a sur-reply addressing the affidavit and arguments raised by Catlow on this issue. This sur-reply shall be filed no later than fifteen (15) days from the entry of this order.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant/Third-Party Defendant Catlow, Inc.'s Motion for Summary Judgment on Martin & Bayley, Inc.'s Claim for Indemnity [DN 151] is **GRANTED IN PART** and **RESERVED IN PART**. It is **GRANTED** as to the indemnity claim and is **RESERVED** for further briefing as to the reimbursement claim.

cc: counsel of record