# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

**CIVIL ACTION NO. 4:08-CV-00015-JHM**

| | |
|---|---|
| **VANESSA L. POTTS and JOHN L. POTTS** | **PLAINTIFFS** |

v.

| | |
|---|---|
| **MARTIN & BAYLEY, INC., d/b/a/ Hucks**, **CATLOW, INC. and HUSKY CORPORATION** | **DEFENDANTS** |

and

| | |
|---|---|
| **MARTIN & BAYLEY, INC., d/b/a/ Hucks** | **CROSS-CLAIMANT** |

v.

| | |
|---|---|
| **CATLOW, INC. and HUSKY CORPORATION** | **CROSS-DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant/Third-Party Defendant Catlow, Inc.'s Motion for Summary Judgment [DN 209]. Fully briefed, this matter is ripe for decision. For the following reasons, the Court **DENIES** Catlow's motion.

## I. BACKGROUND

This matter involves a fire that occurred at a Huck's self-service gas station in Morganfield, Kentucky, on January 14, 2008. Plaintiffs' allege that the fire was caused when a gas pump failed to shut off causing gasoline to overflow out of the gas tank and onto the ground. The gasoline then ignited causing Plaintiff Vanessa Potts to be severely burned. This action was filed by Plaintiffs against the owner of the Huck's, Martin & Bayley, Incorporated, on February 12, 2008. Martin & Bayley then filed a Third-Party Complaint against Catlow, Incorporated and Husky Corporation, the manufacturers of the nozzles used by Huck's at the time of the fire. Thereafter, Plaintiffs' amended

their Complaint to also include claims against Catlow and Husky.

Plaintiffs and Martin & Bayley contend that the nozzle used by W.P., the Plaintiffs' minor son, experienced a stuck poppet stem that caused the unintended overflow of gasoline. Plaintiffs and Martin & Bayley contend that this was caused by the negligent manufacture and/or design of the nozzle by Catlow. Catlow now seeks summary judgment on these products liability claims.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by " showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## III. DISCUSSION

Plaintiffs and Martin & Bayley are proceeding under strict liability, negligent manufacture, negligent design and negligent warning products liability theories against Catlow. Catlow contends that it is entitled to summary judgment on these claims because Plaintiffs and Martin & Bayley have failed: (1) to identify the nozzle that was used by W.P. as a Catlow nozzle; (2) to demonstrate the presence of a defect within the nozzle; (3) to demonstrate that Catlow had notice of such a defect; (4) to demonstrate a viable alternative design; and (5) to demonstrate that the nozzle was a substantial factor in Vanessa Potts' injury.

Under Kentucky law, the standard for strict liability in products liability is governed by Section 402A of the Restatement (Second) of Torts (1965). See Morales v. American Honda Motor Co., Inc., 151 F.3d 500, 506 (6th Cir. 1998); Dealers Transp. Co. v. Battery Distrib. Co., 402 S.W.2d 441 (Ky. 1965). Under § 402A, a manufacturer is liable if he sells a product that is "in a defective condition unreasonably dangerous to the user" which is expected to, and does in fact, reach the customer without substantial alteration. See Restatement (Second) of Torts § 402A (1965). The term "unreasonably dangerous" means "a product that is 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.'" Greene v. B.F. Goodrich Avionics Sys., Inc., 409 F.3d 784, 789 (6th Cir. 2005) (quoting Restatement (Second) of Torts § 402A cmt. I (1965)).

When a plaintiff proceeds under a negligence products liability theory the "distinction between the so-called strict liability principle and negligence is of no practical significance so far as the standard of conduct required of the defendant is concerned." Jones v. Hutchinson Mfg., Inc., 502 S.W.2d 66, 70 (Ky. 1973). A plaintiff proceeding under a design defect or manufacturing defect

3

theory must still establish that the product was in a defective condition unreasonably dangerous when it left the manufacturer's control. Greene, 409 F.3d at 788. However, a plaintiff proceeding under a negligence theory must also establish that the manufacturer knew or should have known of the defect in its product. See Worldwide Equip., Inc. v. Mullins, 11 S.W.3d 50, 55 (Ky. Ct. App. 1999). Regardless of the theory under which a plaintiff seeks recovery, he must first establish that the product he alleges injured him was in fact made by the defendant. See Morris v. Wyeth, Inc., 2008 WL 2677048, at *2 (W.D. Ky. June 30, 2008). The plaintiff further bears the burden of establishing causation by showing that the defective product was a substantial factor in bringing about his injury. King v. Ford Motor Co., 209 F.3d 886, 893 (6th Cir. 2000).

**A. Identification of the Nozzle**

Catlow first contends that it is entitled to summary judgment because neither Plaintiffs nor Martin & Bayley can establish that the nozzle that W.P. was using was a Catlow nozzle. Catlow argues that Martin & Bayley's identification relies on the inadmissible hearsay evidence of Detective Willet and Fire Marshall Fogle and the inadmissible expert testimony of Rich MacInnes. Catlow has filed a contemporaneous Daubert challenge seeking to exclude the opinions and testimony of MacInnes. However, the Court has found that MacInnes's opinions and testimony regarding the identity of the nozzle are admissible. (See Memorandum, Opinion & Order, October 4, 2011 [DN 283].)

MacInnes has opined that the nozzle that W.P. was using was a Catlow nozzle. He formed this opinion by examining burn patterns on the nozzles, melted plastic patterns on the dispenser and on the nozzles, and x-rays of the different nozzles. MacInnes has also reconstructed the fuel dispenser matching the different nozzles to their respective positions using melting patterns and fire

4

damage and concluded that the nozzle used by W.P. was a Catlow nozzle. The Court finds that this evidence is sufficient to create a genuine dispute of material fact regarding the identity of the nozzle. Therefore, the Court finds that summary judgment on this ground is not appropriate.

**B. Presence of a Defect**

Catlow next contends that neither Plaintiffs nor Martin & Bayley has produced evidence that establishes the presence of a defective condition within the nozzle. Catlow contends that the only evidence that either party has put forward on this issue are the opinions and testimony of MacInnes. Catlow argues that because it believes MacInnes's testimony to be inadmissible that it is entitled to summary judgment.

The Court has found that MacInnes's opinions and testimony regarding the presence of a manufacturing and design defect are admissible. MacInnes has opined that the nozzle was defective and caused unintended overflow when the poppet stem became stuck in the up/open position due to out of specification manufacturing. MacInnes has opined further that the design of the poppet stem itself contributed to it becoming stuck. He has testified that the poppet stem on the subject nozzle had a single holding port for the valve stem instead of two, which allowed the stem to move more freely from side to side, and consequently to become stuck. (See Pls.' Resp. Catlow's Mot. Summ. J. 11 [DN 244] (citing MacInnes Dep. 178:11-20).) Given the admissibility of this evidence, the Court finds that there is a genuine dispute of material fact regarding the presence of a manufacturing and/or design defect present in the nozzle. Therefore, the Court finds summary judgment on this ground is not appropriate.

**C. Notice**

Catlow next contends that it is entitled to summary judgment because there is no admissible

evidence that establishes that Catlow knew or should have known about the alleged defect within its nozzles. Catlow argues that the only evidence that has been produced regarding this element is a series of warranty records that are inadmissible. These records were the subject of an earlier motion to exclude. In its Memorandum, Opinion and Order dated September 28, 2011 [DN 271], the Court found that the tendered warranty records were admissible for the purpose of establishing Catlow's knowledge of intermittent non-shutoff/overflow problems in its Elite Nozzles. The Court finds that these records are sufficient to establish a genuine dispute of material fact regarding the issue of notice. Therefore, the Court finds that summary judgment on this ground is not appropriate.

**D. Safer Alternative Design**

Catlow next contends that it is entitled to summary judgment because Plaintiffs and Martin & Bayley have failed to show that a safer alternative design exists. "In the typical design defect claim Kentucky law requires proof of a feasible alternative design." Burke v. U-Haul Intern., Inc., 501 F. Supp. 2d 930, 933 (W.D. Ky. 2007). Catlow contends that MacInnes has never identified a safer feasible alternative design. However, in his Fourth Report, MacInnes includes a picture and discussion of a feasible alternative design that he found in Catlow's own manufacturing facility. (MacInnes Fourth Report, June 13, 2011, at 22 [DN 178].) The design included "the use of bearings and O-rings . . . for securing the poppet stem orientation, and ensuring that the stem does not stick." The Court finds that this evidence creates a genuine dispute of material fact regarding the presence of a safer feasible alternative. Therefore, the Court finds that summary judgment on this ground is not appropriate.

**E. Causation**

Catlow's final argument for summary judgment is that the Plaintiffs and Martin & Bayley

6

have failed to demonstrate that the allegedly defective nozzle was a substantial factor in Vanessa Potts' injury. Catlow contends that "the evidence suggests many possible causes of the static fire." (Catlow's Mem. Support Mot. Summ. J. 29 [DN 210].) However, the parties need not prove that the defect in the nozzle caused the static fire in order to succeed. The necessary showing for causation under Kentucky law is that the defect was a substantial factor in causing the plaintiff's injury. See King, 209 F.3d at 893. Taking the evidence in the light most favorable to Plaintiffs and Martin & Bayley, the Court finds that there is a genuine dispute of material fact regarding causation. MacInnes has produced opinion testimony that Catlow's nozzle had a defect within it that caused the poppet stem to stick in the open position resulting in unintended overflow of gasoline. This overflow of gasoline ran down the side of the Potts' vehicle and pooled on the ground below the driver's side door. When Mrs. Potts exited her vehicle, the gasoline caught fire, burning Mrs. Potts. A reasonable jury could find the preceding facts demonstrate that Catlow's conduct in designing or manufacturing a defective nozzle was a substantial factor in causing the fire that injured Vanessa Potts. Therefore, the Court finds that summary judgment on this ground is not appropriate.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant/Third-Party Defendant Catlow, Inc.'s Motion for Summary Judgment [DN 209] is **DENIED**.

cc: counsel of record