# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

**CIVIL ACTION NO. 4:08-CV-00015-JHM**

VANESSA L. POTTS and JOHN L. POTTS            PLAINTIFFS

    v.

MARTIN & BAYLEY, INC., d/b/a/ Hucks,
CATLOW, INC. and HUSKY CORPORATION          DEFENDANTS

    and

MARTIN & BAYLEY, INC., d/b/a/ Hucks            CROSS-CLAIMANT

    v.

CATLOW, INC. and HUSKY CORPORATION          CROSS-DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Catlow's Motion in Limine [DN 235]. Fully briefed, this matter is ripe for decision.

### I. DISCUSSION

**1. Liability Insurance**

Catlow seeks to exclude any testimony, reference, or documentation that would suggest that Catlow may have liability insurance pursuant to F.R.E. 411. Neither Plaintiffs nor Martin & Bayley have objected. Therefore, the Court **GRANTS** Catlow's motion.

**2. Settlement Negotiations or Discussions**

Catlow seeks to exclude any mention of settlement negotiations or discussions by the parties pursuant to F.R.E. 408. Neither Plaintiffs nor Martin & Bayley have objected. Therefore, the Court **GRANTS** Catlow's motion.

**3. Identity of the Nozzle**

Catlow seeks to exclude inadmissible hearsay testimony related to the identification of the nozzle used by W.P. Catlow contends that Detective Michael Willett and Fire Marshal Phil Fogle have testified at their depositions regarding the identity of the nozzle based on inadmissible hearsay. At his deposition, Detective Willett testified that he was 99.9% sure that the nozzle that was collected and sent to the evidence locker at the police station was the nozzle used by W.P. (Willett Dep. 15:11-19.) However, Detective Willett also testified that he never saw the nozzle at the scene of the fire, that he does not know who collected it, and that the first time he saw it was at the police station. (Id. at 12:1-6.)

Fire Marshal Phil Fogle stated in his report on the fire and at his deposition that the nozzle involved in the fire and collected was a Catlow nozzle. (Fogle Dep. 49:15-25.) However, when asked how he determined that the nozzle collected was the nozzle used by W.P. he stated "[t]he fire department told me that that was the nozzle." (Id. at 53:2-3.) Fire Marshal Fogle could not recall which firefighter identified the nozzle as the one used by W.P., only that some fireman had told him that. (Id. at 49:19-21.)

Catlow contends that Detective Willett and Fire Marshal Fogle lack the personal knowledge necessary to testify regarding whether the nozzle collected was the nozzle used by W.P. Catlow argues that these witnesses' determinations are based upon statements and actions of unidentified officers and firefighters. Catlow contends that Detective Willett's and Fire Marshal Fogle's proposed testimony is hearsay without an exception and should be excluded. Catlow further argues that these witnesses' likely testimony is not admissible as a lay witness's opinion under F.R.E. 701.

Martin & Bayley contends that this proposed testimony is admissible under Federal Rule of

2

Evidence 803(1) as a present sense impression. Rule 803(1) states in pertinent part that "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" is not excluded by the hearsay rule. Fed. R. Evid. 803(1). The statement must be drawn from the declarant's firsthand knowledge of the event or condition. See United States v. Price, 58 F. App'x 105, 106-07 (6th Cir. 2003); 2 McCormick on Evidence § 271 (6th ed. 2006). "A statement does not qualify as a present sense impression if it merely reports opinions held by others." Joseph W. Cotchett, Federal Courtroom Evidence, Ch. 22, § 803.2, at 20 (5th ed. 2011).

In Meder v. Everest & Jennings, Inc., a plaintiff brought a products liability action against the manufacturer of his wheelchair after the wheelchair unexpectedly tipped forward. 637 F.2d 1182 (8th Cir. 1981). After the accident, a police officer interviewed several witnesses, and then prepared a report in which he stated that the plaintiff was propelled out of the wheelchair after it hit a curb. Id. at 1185. The officer testified that he was unsure to whom he had spoken with about the cause of the accident, and he admitted that when he wrote his report he was "relying on what somebody else told [him]." Id. at 1186. The plaintiff moved to exclude the report and testimony of the officer, but the district court denied his motion. Id.

On appeal, the Eighth Circuit Court of Appeals reversed the district court and found that the officer's report and testimony were inadmissible and should not have been permitted into evidence. Id. at 1186. The Eighth Circuit found that "[t]he officer was unable to testify where he obtained the information or even who he had interviewed. Under such circumstances, it is impossible for us to determine whether the maker of the statement was an eyewitness of what occurred at the scene and it was therefore improper to admit the evidence" under F.R.E. 803(1). Id.

3

The proposed testimony of Officer Willett and Fire Marshal Fogle regarding the identity of the nozzle suffers from the same problem identified in Meder. Neither Detective Willett nor Fire Marshal Fogle were present when the nozzle was identified. Instead, they each relied upon statements from unidentified individuals at the scene regarding the identity of the nozzle. Given these facts, it is impossible for the Court to determine if the declarant who first identified the nozzle was an eyewitness who had firsthand knowledge regarding the nozzle. It is further impossible to determine if the identification of the nozzle occurred contemporaneously or immediately after the unidentified individual perceived the nozzle spewing gasoline, as required under F.R.E. 803(1). Therefore, the Court finds that the challenged evidence is not admissible as a present sense impression under F.R.E. 803(1). See United States v. Nanny, 745 F. Supp. 475, 480-81 (M.D. Tenn. 1989) (finding officer's testimony regarding a different officer's statement inadmissible under F.R.E. 803(1) because there was no evidence that the declarant made the statement contemporaneously or immediately after administering the sobriety test).

Martin & Bayley argues, in the alternative, that the statements are admissible under the public report exception of F.R.E. 803(8)(C). The public report exception states in pertinent part that "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . factual findings resulting from an investigation made pursuant to authority granted by law" are not excluded by the hearsay rule, "unless the sources of information or other circumstances indicate lack of trustworthiness." Fed. R. Evid. 803(8)(C). Under Rule 803(8), there is no requirement that the preparer of the document have personal knowledge of the facts reported and even the factually based opinions and conclusions of the preparer are admissible. See Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 161-62 (1988). However, "a trial judge has the discretion,

and indeed the obligation, to exclude an entire report or portions thereof-whether narrow 'factual' statements or broader 'conclusions'-that she determines to be untrustworthy." Id. at 167.

The Court finds that Detective Willett's and Fire Marshal Fogle's testimony that the nozzle collected was the nozzle used by W.P. is not admissible under F.R.E. 803(8)(C). The identification of the nozzle by unidentified firefighters and the transportation of the nozzle to the police department by unidentified individuals indicates a lack of trustworthiness. This is not an issue that can be addressed on cross-examination as the most that these witnesses can testify to is that somebody told them this was the nozzle. The Court has concerns regarding the origination of this information such that it does not believe the challenged evidence has the necessary trustworthiness to be admissible under F.R.E. 803(8)(C). See Meder, 637 F.2d at 1187-88 (finding officer's report inadmissible under F.R.E. 803(8) on the grounds that it demonstrated a lack of trustworthiness where the officer "could not recall the source of the statement on the report.").

Martin & Bayley also argues that the testimony of Detective Willett and Fire Marshal Fogle is admissible as a lay witness opinion under F.R.E. 701. Federal Rule of Evidence 701 states in pertinent part that:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

"In applying Rule 701, 'the modern trend among courts favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination.'" Harris v. J.B. Robinson Jewelers, 627 F.3d 235, 240 (6th Cir. 2010) (quoting United States v. Valdez-Reyes, 165 F. App'x 387, 392 (6th Cir. 2006)).

In the instant case, the Court finds that Detective Willett and Fire Marshal Fogle do not have sufficient personal knowledge to testify to an opinion that the nozzle collected was the nozzle used by W.P. Detective Willett testified that Fire Marshal Fogle asked that the nozzle be collected into evidence. (Willett Dep. 11: 5-9.) But Detective Willett did not collect the nozzle, rather, he saw it for the first time back at the police station. (Id. at 12:4-5.) Fire Marshal Fogle testified that he was not sure who picked the nozzle up, but that the nozzle he collected was the one that unidentified firefighters claimed was spewing gasoline. (Fogle Dep. 50:9-16.) This demonstrates that these two witnesses do not have personal knowledge regarding which nozzle was actually used by W.P. Therefore, the Court finds that Detective Willett and Fire Marshal Fogle's identification of the nozzle is not admissible as a lay witness's opinion under F.R.E. 701. See Meder, 637 F.2d at 1188 (finding contents of officer's report regarding accident inadmissible under F.R.E. 701 because the contents of the report were not his own conclusions and could not be characterized as his opinion).[1]

Notwithstanding, there is nothing preventing either Detective Willett or Fire Marshal Fogle from testifying to his own personal knowledge of the incident and the subsequent collection of

---

[1] See also United States v. Ganier, 468 F.3d 920, 926-27 (6th Cir. 2006) (finding that an officer not disclosed as an expert can only testify to lay opinion testimony when she "is a participant in the conversation, has personal knowledge of the facts being related in the conversation, or observed the conversations as they occurred"); United States v. Perkins, 470 F.3d 150, 156 (4th Cir. 2006) (finding officers' opinions regarding the reasonableness of another officer's use of force was inadmissible under F.R.E. 701 because witnesses did not see the use of force); Howley v. Town of Stratford, 217 F.3d 141, 155 (2d Cir. 2000) ("[A]ssertions made by [witness] only on information and belief, for example, would not be admissible through her at trial, for testimony as to facts must generally be based on the witness's personal knowledge."); Brandon v. Village of Maywood, 179 F. Supp. 2d 847, 856-57 (N.D. Ill. 2001) (finding opinion testimony of state police officers based on their after-the-fact investigation was inadmissible under F.R.E. 701 because they lacked personal knowledge of the events leading up to the shooting).

evidence. Fire Marshal Fogle is free to testify that he requested that the subject nozzle be collected, and that a nozzle was in fact collected. Detective Willett can testify that he was instructed to take custody of evidence from the fire, including a nozzle, and that he took custody of a nozzle. However, they may not testify or offer an opinion that the nozzle collected was in fact the nozzle used by W.P. Therefore, the Court finds that evidence in the form of a report or direct testimony by either Detective Willett or Fire Marshal Fogle stating that the nozzle collected was the nozzle used by W.P. is inadmissible. Accordingly, the Court **GRANTS** Catlow's motion.

**4. Financial Condition or Net Worth**

Catlow seeks to exclude any evidence regarding its financial condition or net worth. Catlow contends that such evidence is irrelevant and prejudicial. Catlow further argues that under Kentucky law parties are prohibited from introducing such evidence by Hardaway Mgmt. Co. v. Southerland, 977 S.W.2d 910, 916 (Ky. 1998). Plaintiffs contend that evidence of Catlow's financial condition is relevant and admissible in punitive damages actions. Plaintiffs argue that K.R.S. § 411.186(2) specifically instructs the trier of fact to consider "[t]he profitability of the misconduct to the defendant" when determining the extent of a punitive damages award. K.R.S. § 411.186(2)(c). Plaintiffs request that this issue be reserved for trial.

In Hardaway, the Kentucky Supreme Court unequivocally stated that "in an action for punitive damages, the parties may not present evidence or otherwise advise the jury of the financial condition of either side of the litigation." Hardaway, 977 S.W.2d at 916. The court specifically found that this rule "was not affected by the enactment of KRS 411.186, though subsection (2)(c) of that statute would permit evidence of the extent to which the defendant *profited from the wrongful act, itself*." Id. at 216 n.2 (emphasis in original).

The Court recognizes K.R.S. § 411.186 and its charge to the trier of fact to consider profits derived from the wrongful conduct. However, that does not permit the introduction of evidence regarding the net worth of a company. Hardaway, 977 S.W.2d at 916. Punitive damages should be fixed with calm discretion and sound reason. If Plaintiffs have relevant evidence linking Catlow's profit margins to the sale of the allegedly defective nozzles, then the jury would be entitled to consider such evidence. However, the Court finds that evidence regarding the overall financial condition or net worth of Catlow is not admissible. Therefore, the Court **GRANTS** the motion.

**5. Evidence and Witnesses not Timely Disclosed, Expert Testimony and Opinions Beyond Disclosures**

Catlow seeks to exclude all evidence and witnesses not timely disclosed, as well as all expert testimony and opinions that exceed timely disclosed expert reports. Under Fed. R. Civ. P. 26(e)(1) the parties have a continuing duty to supplement their disclosures and discovery responses. Furthermore, under Fed. R. Civ. P. 26(a)(2)(B) retained expert witnesses are required to produce a written report stating the opinions they intend to express, the basis for those opinions, the facts or data considered in forming them, and any exhibits that will be used to support them. The parties are under a continuing duty to supplement those expert reports in accordance with Rule 26(e). Fed. R. Civ. P. 26(a)(2)(E). Fed. R. Civ. P. 37(c)(1) requires preclusion of witnesses and evidence not disclosed in accordance with Fed. R. Civ. P. 26(a) or (e) unless the party can show that the failure to timely disclose was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Although Catlow has not identified any specific evidence, witness, or expert opinion, report or testimony that it is seeking to exclude, the other parties have no objection as long as Dr. Bebout

testimony regarding future medical damages and Rich MacInnes timely disclosed opinions are not excluded. Therefore, the Court **GRANTS** this motion. To the extent that either Dr. Bebout or Mr. MacInnes are challenged at a later time, the Court will address such issues at that time.

**6. Non-compliance with Underwriters Laboratories**

Catlow seeks to exclude any evidence regarding its alleged non-compliance with certification from Underwriters Laboratory (UL). Catlow contends that this evidence is not relevant because it does not make the existence of a defect in its nozzle any more or less probable. Catlow further argues that these changes were minor changes that did not require notification to UL and that as of May 2011 UL had re-certified the Elite Nozzle with all of its minor changes. Catlow's final argument is that any probative value that this evidence may have is substantially outweighed by its potential prejudice and confusion of the issues.

Martin & Bayley contends that this evidence is relevant to its breach of express warranty claim. Martin & Bayley argues that Catlow expressly warranted its nozzles as UL certified, but that Catlow's actions during the relevant manufacturing period violated several UL requirements. Martin & Bayley further argues that because the nozzles that Catlow manufactured contained changes not reported to UL, Catlow's use of the UL label on the nozzles was an invalid use of the label. Martin & Bayley contends that the UL re-certification that Catlow discusses only applies to a subsection of Catlow nozzles, which does not include the nozzle at issue in this case.

Under the Federal Rules of Evidence, "relevant evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The Sixth Circuit has found that "[t]he Federal Rules of Evidence set a low bar for relevance." Cambio

Health Solutions, LLC v. Reardon, 234 F. App'x 331, 338 (6th Cir. 2007). The Court finds that the evidence regarding Catlow's UL certification is probative of whether Catlow breached an express warranty with Martin & Bayley. Furthermore, while such evidence may be prejudicial, it is not unduly prejudicial and does not require exclusion under F.R.E. 403. Accordingly, the Court **DENIES** Catlow's motion.

## II. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that Catlow's Motion in Limine [DN 235] is **GRANTED IN PART** and **DENIED IN PART**.

Catlow's Motion is **GRANTED** in respect to liability insurance; settlement negotiations or discussions; Detective Willett and Fire Marshal Fogle's identification of the nozzle; proof of financial condition or net worth; and untimely disclosure of evidence, witnesses, and expert opinions, testimony, or reports.

**IT IS DENIED** in respect to UL certification.

cc: counsel of record